UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANUSZ KRZESAJ,

                              Plaintiff,

                  - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION, JUDY HENRY, in her official
and individual capacity, and LUIS SANTIAGO,
in his official and individual capacity,

                              Defendants.

**OPINION AND ORDER**

16 Civ. 2926 (ER)

Ramos, D.J.:

 Plaintiff Janusz Krzesaj brings this action against New York City Department of

Education ("DOE"), and Principal Judy Henry and Assistant Principal Luis Santiago, in their

official and individual capacities (together, "Defendants"), alleging employment discrimination

and retaliation, intentional or negligent infliction of emotional distress, and defamation.  Before

the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

 For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in

part.

## I. Factual Background[1]

 Plaintiff is a forty-nine year old Polish man.  Amended Complaint ¶ 9.  He has numerous

master's degrees, including in education, physical education and sports psychology, exercise

---

[1] The following facts are drawn from allegations contained in the Amended Complaint (Doc. 22), which the Court accepts as true for purposes of the instant motion.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

science, and sports management, and previously taught physical education at a primary school in Poland. *Id.* at ¶ 17.  In addition to playing professional soccer in Europe, Plaintiff has also coached a number of different sports and has several coaching licenses.  *Id.*

In February 2004, Plaintiff, a member of the United Federation of Teachers ("UFT"), was hired as a full time physical education teacher at the Queens Gateway to Health Sciences Secondary School ("Gateway").[2]  *Id.* at ¶ 12.  At Gateway, Plaintiff started a number of athletic and educational programs.  For example, he helped Gateway join the Public School Athletic League ("PSAL") by creating eligible rugby, cross country, volleyball, track and field, and basketball teams.  He also helped Gateway join the CHAMPS School Sports and Fitness League for its junior high school students.  *Id.* at ¶ 16.  From 2004 to 2013, Plaintiff received year-end ratings of "satisfactory."

Approximately eight years after he joined Gateway, in May 2012, Defendant Judy Henry became the Principal.  One month later, on June 2, 2012, Plaintiff emailed her to report dangerous conditions in the school gym.  *Id.* at ¶ 18.  Later that month, he applied to coach the school's PSAL soccer team.  *Id.* at ¶ 22.  Plaintiff claims that shortly after his complaint about the conditions in the gym, Henry called him in for a disciplinary conference and placed a disciplinary letter in his personnel file claiming that he had been insubordinate.  *Id.* at ¶ 20.  He also alleges that despite his qualifications and seniority rights pursuant to the collective bargaining agreement ("CBA") between the DOE and UFT, Henry rejected his application to coach the soccer team, causing the PSAL to shut the program down at the school.  *Id.* at ¶ 22.

---

[2] Gateway is a school within the DOE.

Plaintiff asserts that Henry's "campaign of harassment against him" then continued for four academic years (2012-2016). *Id.* at ¶ 21. Specifically, he claims that Henry subjected him to numerous unjust disciplinary conferences and placed unfounded disciplinary letters in his personnel file. *Id.* She also wrote allegedly false evaluations after observing Plaintiff's classes and denied his applications for per-session coaching positions. *Id.* Plaintiff further argues that Henry failed to provide reasonable accommodations for him despite knowing of his multiple knee surgeries, cancer diagnosis, and other physical ailments. *Id.* Finally, Plaintiff claims that despite having successfully grieved numerous disciplinary actions and unfounded teacher ratings issued against him, those actions and ratings are still reflected in his personnel file.

### 2012-2013 Academic Year

Plaintiff claims that Henry began harassing him at the very beginning of the 2012-2013 academic year, by delaying the start of the CHAMPS sports programs for three weeks. *Id.* at ¶ 23. Henry also made rude comments about Plaintiff's physical appearance[3] and in response to Plaintiff's questions regarding the appropriateness of his class assignments for the year.[4] *Id.* at ¶¶ 24-25. Plaintiff claims that in May 2013, Henry called Plaintiff to a meeting to inform him that he could not sit down during his classes. *Id.* at ¶ 26. Although Plaintiff explained that he sat because he had undergone three surgeries on his knee and suffered from back pain, Henry

---

[3] Plaintiff claims that Henry told him that he had the potential to be a good physical education teacher, but that he had to "eat more Greek yogurt" so that he did not become the proverbial "fat doctor who died from a heart attack." Amended Complaint ¶ 24.

[4] Plaintiff claims that the PE teachers were assigned to teach English literacy. Plaintiff claims that Henry knew that English was not his first language and that when he asked her questions regarding this assignment, she responded by telling him that she would make him "regret [he was] born." She also shouted at Plaintiff to "get the hell out" of the meeting. *Id.* at ¶ 25.

refused to accommodate him.  *Id.* at ¶ 26.  Plaintiff filed at least three union grievances against

Henry during the academic year, none of which Henry addressed.  *Id.* at ¶ 27.

**2013-2014 Academic School Year**

Plaintiff alleges that the following academic year, he was selected by Gateway's staff to

be on the School Leadership Team ("SLT").  *Id.* at ¶ 27.  He claims that Henry was very hostile

to him during SLT meetings and that he reported her alleged misconduct to the Special

Commissioner of Investigation ("SCI").  *Id.* at ¶ 28.  Plaintiff also claims that Henry denied his

applications for coaching positions for both the CHAMPS and PSAL programs.  Specifically, in

September, Plaintiff was denied the CHAMPS fall coaching position, though he had retention

rights pursuant to the UFT contract.  *Id.* at ¶ 29.  In November, Plaintiff was denied the PSAL

varsity girls basketball coaching position, and the head and assistant coaching positions for the

varsity indoor/outdoor track team.  *Id.* at ¶ 32.  Instead, Henry hired unlicensed and unqualified

teachers and paraprofessionals.  *Id.* at ¶ 43.  Plaintiff filed a union grievance contesting Henry's

denial of his CHAMPS fall coaching application.  *Id.* at ¶ 29.  Plaintiff was also subsequently

denied the CHAMPS coaching position for the winter season – again, despite his contractual

rights.  *Id.* at ¶ 36.  However, on March 18, 2014, after a grievance hearing, a representative from

the Chancellor's Office of the DOE found that Henry's denial of Plaintiff's application for the

CHAMPS coaching position was "illegal," and ordered Henry to allow Plaintiff to recover lost

wages.  Plaintiff was not paid until over a year later, in May 2015.  *Id.* at ¶ 37.

Plaintiff further alleges that later that year, in October 2013, Henry scheduled a

disciplinary conference in which she accused him of improperly organizing practices for the

rugby team during the offseason and issued a disciplinary letter based on the accusation.  *Id.* at ¶

30.  Plaintiff asserts that during the 2013-2014 academic year, Henry made numerous false accusations against Plaintiff resulting in at least thirteen disciplinary conferences and two disciplinary letters added to his file.  *Id.* at ¶ 31.  On December 16, 2013, Plaintiff filed a grievance against Henry for harassment.  *Id.* at ¶ 33.  Shortly thereafter, Plaintiff received three disciplinary letters.[5]  *Id.* at ¶ 34.  Henry also gave Plaintiff a rating of "ineffective" after a purported class observation in April, though Plaintiff claims that Henry did not actually observe his class.  *Id.* at ¶ 39.

On May 19, 2014, during one of his classes, Plaintiff tripped on the gym floor, which was in a state of disrepair, and dislocated his toe.  *Id.* at ¶ 40.  He was immediately taken to the hospital and soon after, filed the paperwork for a line of duty injury.  He alleges that he was not granted this status until approximately one month later.  *Id.*

At the end of the school year, Henry gave Plaintiff an overall rating of "ineffective" for the 2013-2014 academic year.  *Id.* at ¶ 41.  Plaintiff appealed Henry's rating, but the DOE agreed to remove it before the appeal could be heard.  The DOE also ordered Henry to remove the allegedly false observations of Plaintiff's class that she had filed in April.[6]  *Id.* at ¶ 63.  Though the rating was removed the following school year, Plaintiff asserts that the false observations have yet to be removed.  *Id.* at ¶ 41.

---

[5] Plaintiff also claims that in January, the UFT Chapter Leader, Ivette Ortiz, spoke with Henry to discuss the discrimination and harassment to which Plaintiff was being subjected.  *Id.* at ¶ 35.  After the meeting, Ortiz informed Plaintiff that Henry said that there was "nothing to talk about" regarding Plaintiff and that Plaintiff "could file as many grievances as he wants."  *Id.*

[6] Specifically, Plaintiff claims that the DOE "recognized the violation of the rating protocol and biased treatment by Principal Henry and agreed to overturn his ineffective rating for the stated 2013-2014 school year."  *Id.* at ¶ 63.

**2014-2015 Academic Year**

On September 3, 2014, Plaintiff was assigned a schedule that included a majority of classes outside of the areas in which was licensed to teach.  *Id.* at ¶ 42.  The classes also required Plaintiff to travel to five different classrooms, despite his physical limitations.  Consequently, Plaintiff filed a reorganization grievance, which resulted in an order requiring Henry to change Plaintiff's schedule.  *Id.*  On November 17, Henry issued Plaintiff a memorandum stating that he was not permitted to sit during his lessons.  *Id.* at ¶ 48.  In response, Plaintiff gave Henry a doctor's note explaining that he could not stand for more than thirty minutes at a time due to his physical ailments.  *Id.*  During the school year, Plaintiff sent an email to Henry requesting an elevator key to facilitate his access to the various classrooms.  He claims that Henry delayed granting his request for over a year.  *Id.* at ¶ 57.

On December 9, 2014, Henry transferred all of the special education students from another physical education teacher's class to Plaintiff's class without giving Plaintiff the students' Individualized Education Plans ("IEP").  *Id.* at ¶ 50.  Though Plaintiff requested the IEPs several times, his requests were ignored.  *Id.*  Plaintiff claims that Henry transferred the students to lower his Measure of Student Learning ("MOSL") rating score for the 2014-2015 school year.[7]  *Id.* at ¶¶ 50, 54.  That same day, Henry observed Plaintiff's class.  Though Plaintiff's lesson for the class required strict adherence to the DOE protocol for "fitnessgram testing," and he alleges that he followed the protocol, Henry rated his lesson as ineffective.

---

[7] The DOE uses a "variety of assessments to measure student learning, with the aim that schools and teachers use student data to drive instructional decision-making, toward the goal of preparing all students for college and career." These assessments are described as MOSL.  The DOE also uses a rating system for assessing teachers called the Measures of Teacher Practice ("MOTP").  A teacher's overall rating is based on both the MOSL and MOTL.  *See http://schools.nyc.gov/Offices/advance/About+Advance/studentlearning/default.htm;* http://www.uft.org/teaching/measures-teacher-practice.

Henry also reproached Plaintiff for sitting during the class.  *Id.* at ¶ 51.  Plaintiff successfully grieved the rating resulting in an order from the DOE directing Henry to remove the evaluation from Plaintiff's teaching file.  *Id.*  However, the evaluation still remains in Plaintiff's file.  *Id.* On December 22, Plaintiff also filed a complaint with the New York State Education Department Office of Special Education ("NYSED") reporting Henry's violation of Special Education laws by failing to provide him with copies of the students' IEPs.  The NYSED substantiated all of Plaintiff's allegations.  *Id.* at ¶ 53.

Plaintiff also claims that he had to attend numerous disciplinary conferences that year. As a result of his ineffective rating for 2013-2014, Plaintiff was placed on a "teacher improvement plan" or TIP for the 2014-2015 academic year.  Though he attempted to gather more information about what was expected of him under the plan, Plaintiff claims that Henry refused to answer his questions and instead scheduled him for a disciplinary conference accusing him of "conduct unbecoming a professional."  *Id.* at ¶ 44.  Plaintiff attended additional disciplinary meetings for purported acts of insubordination and theft of services, *id.* at ¶¶ 47, 60, and for allegedly verbally abusing a student.[8]  *Id.* at ¶ 61.  Plaintiff was also allegedly forced to attend three disciplinary meetings as a result of an action plan he instituted in response to a reported gun threat.  Plaintiff asserts that a student reported the threat at a meeting and though multiple attempts were made to contact Henry, she could not be reached at the time.  *Id.* at ¶ 62. In addition to the disciplinary meetings, Henry also reported Plaintiff to the Office of Special Investigations for his actions.  *Id.*

---

[8] Plaintiff provides no further information about Henry's accusations.  However, as evidence that Henry's claims were false, Plaintiff notes that the day Henry claims that he verbally abused a student was a Saturday – a day in which no classes were held and Plaintiff was not in the school building.  *Id.* at ¶ 61.

On May 29, 2015, Defendant Assistant Principal Luis Santiago assigned Plaintiff to cover classes for absent colleagues during Plaintiff's "prep periods." *Id.* at ¶ 64. Plaintiff claims that he needed the periods to prepare for his difficult teaching schedule, but was directed to cover the classes on a daily basis nonetheless. Because Plaintiff was having difficulty preparing for his classes without the prep period, Santiago summoned Plaintiff to a disciplinary meeting. *Id.* The next month, Henry observed one of Plaintiff's classes and once again rated his lesson as ineffective. *Id.* at ¶ 65. Plaintiff filed complaints concerning the ratings, which were later substantiated through arbitration. *Id.* at ¶ 75. As a result, Henry was ordered to remove the observations and change Plaintiff's rating. Plaintiff claims Henry has not complied with the arbitrator's order and that the observation and rating are still in his file. *Id.*

As she had the previous academic year, Henry again denied Plaintiff's coaching applications for the year. On October 15, 2014, Plaintiff was denied the coaching position for the soccer program. He was also denied coaching positions for the PSAL basketball team. *Id.* at ¶ 49. In March, Henry denied Plaintiff's application to coach the rugby team (the program he created), preventing the students' participation in the first set of games. *Id.* at ¶ 59. Plaintiff filed a grievance with Henry challenging her denial of his PSAL coaching applications, but Henry never responded. *Id.* at ¶ 43.

Henry also rated Plaintiff ineffective for the 2014-2015 academic year. *Id.* at ¶ 66. Plaintiff filed complaints about his rating and improper observations, and asserts that the rating

will most likely be deemed unjustified because he was given overall ratings of effective by a neutral peer validator.[9]  *Id.* at ¶¶ 66, 104.

**2015-2016 Academic Year**

Plaintiff alleges he was disciplined or retaliated against on an almost monthly basis during the 2015-2016 academic year.  Starting in September, Plaintiff was once again placed on a TIP due to his poor rating.  *Id.* at ¶ 69.  After asking questions about the TIP – which was identical to the one he had received the previous year – a disciplinary letter was added to his file.  *Id.* at ¶ 73.  Approximately two weeks later, Henry displaced the physical education teachers from their office by allowing an outside vendor's after school program to use the space.  Plaintiff claims that the two other physical education teachers were given separate offices, however, he was never assigned another office.  *Id.* at ¶ 67.  Henry also denied Plaintiff's applications for six coaching positions for the year, citing his ineffective rating as the reason for the denials.  *Id.* at ¶ 68.

On October 8, 2015, Henry prohibited students from participating in "crossfire," a fitness program created by Plaintiff involving intramural competitions, which Henry had approved and even participated in during the 2012-2013 academic year.  Henry also placed restrictions on Plaintiff's and his students' use of Gateway's outside facilities, though she did not place the same restrictions on the other physical education teachers or their students.  *Id.* at ¶ 70.

On November 3, 2015, Plaintiff received a letter threatening disciplinary action as a result of his absences, despite his having submitted a doctor's note explaining the reason for his

---

[9] Plaintiff defines a "neutral peer validator" as a "content pedagogy specialists chosen by the DOE."  *Id.* at ¶¶ 66, 104.

absences.  *Id.* at ¶ 72.  Later that month, Plaintiff was diagnosed with cancer and was scheduled for surgery on December 18, 2015.  *Id.* at ¶ 74.  Though Henry was well aware of Plaintiff's diagnosis and the date of his surgery, she nonetheless scheduled a TIP meeting on the very day of Plaintiff's surgery.  *Id.* at ¶ 77.  Plaintiff claims that Henry repeatedly scheduled meetings on days that she knew he would be unavailable.

On January 27, 2016, Henry scheduled Plaintiff for two disciplinary meetings to address alleged accusations of misconduct.  *Id.* at ¶ 78.  In early February, Plaintiff filed complaints against the school administration with SCI.  *Id.* at ¶ 80.  He claims that in retaliation for filing the complaints, Plaintiff was assigned to a desk behind a pile of boxes, garbage, dirty clothes, and commercial printers.  *Id.*  He and his students were also denied access to the fitness center.  *Id.*

In March, Plaintiff filed complaints with the New York State's Public Employment Safety and Health Bureau ("PESH") and the United States Occupation and Health Administration ("OSHA"), reporting that two tons of loose metal shelves were piled up in the locker room used by the students and physical education teachers, and that the gym floor (on which he had previously tripped) was damaged.  *Id.* at ¶ 83.  Just one month later, in April, after a hearing on his improper rating, Plaintiff found that the administration had installed a partition around his desk in the former physical education office.  *Id.* at ¶ 82.  The partition had a strong toxic odor which caused Plaintiff nausea, headaches and burned his eyes and throat.  Thereafter, Plaintiff filed another safety hazard complaint with PESH.  *Id.*  PESH responded to Plaintiff's complaint on April 25, ordering Henry to eliminate the source of the odor from Plaintiff's office and provide a report of the completed task.  Plaintiff claims that Henry did not comply with PESH's order.  *Id.* at ¶ 86.

Towards the end of the school year, both Henry and Santiago conducted observations of Plaintiff's class.  Henry gave Plaintiff a rating of ineffective for the lesson she observed, which Plaintiff contested by filing numerous complaints.  Plaintiff claims that Henry did not address any of his filings, *id.* at ¶ 84, but instead scheduled him for three separate disciplinary hearings concerning "petty accusations" against him, *id.* at ¶ 85.  Henry also gave Plaintiff a memorandum prohibiting the use of Plaintiff's particular "teaching methods," which Henry had previously approved.  *Id.* at ¶ 89.  On May 11 and June 6, Santiago observed Plaintiff's class, and like Henry, rated Plaintiff's lessons ineffective.[10]  *Id.* at ¶¶ 91, 93.  He claims that during the observation on June 6, Santiago insisted that Plaintiff force Muslim students, who were fasting for Ramadan, to participate in strenuous physical activities.  *Id.* at ¶ 97.  Plaintiff filed several complaints about Santiago and his improper observations and ratings.  *Id.* at ¶¶ 101-02.  On June 27, 2016, he also filed two complaints with the United States Attorneys' Office ("USAO") regarding Santiago's treatment of Muslim students and his punishment of Plaintiff for accommodating them.[11]  *Id.* at ¶ 101.

On June 23, Plaintiff received his schedule for the 2016-2017 academic year.  Fifty percent of his classes were located on the fourth floor.  *Id.* at ¶ 99.  Since Henry refused to give Plaintiff an elevator key, Plaintiff would be forced to walk up and down four flights of stairs, despite Henry's knowledge of Plaintiff's physical limitations.  *Id.* at ¶ 99.  The next day, on June 24, the day of the junior high school graduation, Plaintiff was ordered to attend morning meetings, which prevented him from presenting awards at the graduation, as he was scheduled to

---

[10] Plaintiff also claims that the last day for class observations was June 3 per DOE regulations, thus making Santiago's June 6 observation improper.  Amended Complaint ¶ 93.

[11] Plaintiff provides no further information regarding the status of these complaints.

do.  Plaintiff claims that Henry and Santiago purposefully scheduled these meetings so that he could not attend the ceremony.  *Id.* at ¶ 100.  Four days later, on June 28, during the final faculty meeting, Plaintiff claims that he was "humiliated and demeaned" when it was announced in front of the entire staff that he would be issued two disciplinary letters, an ineffective MOTP rating, and an ineffective rating for a class evaluation.  *Id.* at ¶ 103.  The entire faculty was also told that Plaintiff would be placed on a TIP.  That same day, in contrast to Henry's and Santiago's ratings, Plaintiff again received an overall rating of "effective" from the neutral peer validator.  *Id.* at ¶ 104.

Though Plaintiff does not allege that he was terminated, he claims that Gateway has a history of forcing retirement or transferring teachers over the age of forty, like Plaintiff.  He also claims that the administration specifically targets teachers who, like him, are of foreign origin and have accents.  *Id.* at ¶ 105.  As of the date of the filing of the Complaint, Plaintiff was still employed at Gateway.

## II.  Procedural History

Plaintiff filed a complaint with the Equal Employment Opportunity Commission on January 16, 2015.  *Id.* at ¶ 106.  On May 9, 2015, he received a right-to-sue letter.  Plaintiff brought the instant suit on April 20, 2016 against the DOE and Henry alleging retaliation under 42 U.S.C. § 1983 and New York Civil Service Law § 75-b, intentional or negligent infliction of emotional distress, and defamation.  (Doc. 1)  On July 20, 2016, Plaintiff filed the Amended Complaint adding Santiago as a defendant and asserting employment discrimination and retaliation claims pursuant to The Age Discrimination in Employment Act of 1967 ("ADEA"), Title VII, Americans with Disabilities Act ("ADA"), and state and city laws.  (Doc. 22)  The

DOE and Henry filed the instant motion to dismiss on August 29, 2016.  (Doc. 29)  On October

11, 2016, the DOE and Henry requested that the Court deem the instant motion applicable to

Santiago (Doc. 39), which the Court granted (Doc. 40).

### III.  Legal Standard

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss

pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true

and draw all reasonable inferences in the plaintiff's favor.  *Koch v. Christie's Int'l PLC*, 699 F.3d

141, 145 (2d Cir. 2012).  However, the Court is not required to credit "mere conclusory

statements" or "threadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive

a motion to dismiss, a complaint must contain sufficient factual matter…to 'state a claim to relief

that is plausible on its face.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S.

at 556).  If the plaintiff has not "nudged [his] claims across the line from conceivable to

plausible, [the] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

### IV.  Discussion

Plaintiff asserts seven causes of action:  (1) First Amendment violation pursuant to 42

U.S.C. § 1983; (2) retaliation in violation of N.Y.S.C.S.L. § 75-b; (3) intentional and/or

negligent infliction of emotional distress; (4) defamation; (5) age discrimination and retaliation

pursuant to the ADEA, the NYSHRL, and the NYCHRL; (6) national origin discrimination and

retaliation under Title VII; and (7) disability discrimination pursuant to the ADA.  The Court will address each claim in turn.

## A. <u>First Amendment Retaliation</u>

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that:  (1) defendants were state actors or were acting under color of state law at the time of the alleged wrongful action; and (2) the action deprived plaintiff of a right secured by the Constitution or federal law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "Section 1983 is only a grant of a right of action; the substantive right giving rise to the action must come from another source."  *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).

A First Amendment retaliation claim by a public employee requires a showing that:  (1) he has engaged in protected First Amendment activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Anemone v. Metro. Transp. Auth.,* 629 F.3d 97, 114 (2d Cir. 2011).  To determine whether an employee's speech is protected by the First Amendment, "a court must begin by asking whether the employee spoke as a citizen on a matter of public concern."  *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (internal quotation marks omitted).  "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his employer's reaction to the speech.'"  *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2016)).  Whether a plaintiff spoke as an employee and not as a citizen is "largely a question of law for the court." *Jackler v. Byrne*, 658 F.3d 225, 237 (2d Cir. 2011).

In the Amended Complaint, Plaintiff asserts that all three Defendants retaliated against him, in violation of the First Amendment, for reporting "safety concerns both within and outside the DOE." Amended Complaint ¶ 108. Defendants interpret this claim to include only Plaintiff's (1) PESH and OSHA complaint regarding the two tons of loose metal shelves piled up in the locker room; (2) PESH complaint about the damaged gym floor; and (3) PESH complaint about the conditions of his former office that made him ill. Memorandum of Law in Support of Motion to Dismiss ("Def. Memo") (Doc. 32) at 6. In his opposition papers, Plaintiff claims that his First Amendment retaliation claim also applies to the complaint he filed with the NYSED about the special education law violations at the school, and to the federal complaint he filed with the USAO regarding the treatment of Muslim students in gym class during their observance of Ramadan. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Opp.") (Doc. 34) at 5. Defendants further contend that Plaintiff's reports were "part and parcel" of his duties as a physical education teacher and thus do not warrant First Amendment protection.[12] Def. Memo at 6.

---

[12] Defendants argue that Plaintiff's First Amendment retaliation claim does not include his NYSED and USAO complaints because they are "beyond the four corners" of the Amended Complaint. However, this claim is inaccurate. The Amended Complaint "repeats and realleges the allegations" set forth in the Statement of Facts, which explicitly include allegations regarding Plaintiff's complaints filed with these entities.

Defendants also try to exclude the NYSED and USAO complaints by pointing to the fact that Plaintiff characterized his First Amendment claim as retaliation for reporting "safety concerns," yet describes his NYSED and USAO complaints as reporting "wrongdoing." Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Def. Reply") (Doc. 36) at 2. The Court is unpersuaded. Plaintiff's complaints to the NYSED and USAO are arguably within the realm of "safety concerns," particularly in the context of physical education classes, and Defendants provide no arguments as to why the Court should conclude otherwise. Experience suggests that IEPs can alert Plaintiff to the particular needs of, or any safety risks posed by, special education students, allowing Plaintiff to adequately prepare safe physical activities for them. In that same vein, forcing Muslim students to engage in strenuous physical activity while fasting can certainly implicate safety and health concerns.

To determine whether Plaintiff's speech is protected, the Court must first determine whether the subject of his speech was (1) a matter of public concern, and if so, (2) whether he spoke as a private citizen or as a public employee. *See Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015). Matters of public concern are those that relate to "any matter of political, social, or other concerns to the community." *Pekowsky v. Yonkers Bd. of Educ.*, 23 F. Supp. 3d 269, 276-77 (S.D.N.Y. 2014) (citing *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013)). Here, Plaintiff's complaints primarily address safety and health concerns. The public has an interest in ensuring that workplaces, especially public school buildings, do not pose health and safety hazards to employees and students. *See e.g.*, *Manon v. Pons*, 131 F. Supp. 3d 219, 231 (S.D.N.Y. 2015) (finding that plaintiff's complaints that worksite had only one exit caused a substantial risk to safety and that air quality in the facility was a health hazard was a matter of public concern); *Collins v. Christopher*, 48 F. Supp. 2d 397, 409 (S.D.N.Y. 1999) (holding that plaintiff's statements made regarding department's compliance with OSHA regulations regarding vaccinations and other health hazards address matters of public concern).

Whether Plaintiff was speaking as a public employee and not a private citizen is a "practical" inquiry. *Weintraub v. Bd. of Educ. Of City Sch. Dist. Of City of N.Y.*, 593 F.3d 196, 202 (2d Cir. 2010). Though there is no checklist, the Court may consider the following factors: plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through plaintiff's employment. *Brady v. Cnty of Suffolk*, 657 F. Supp. 2d 331, 343 (E.D.N.Y. 2009). "[E]ven if a public employee's speech is not required by, or included in his job description, or made in response to a request by the employer, he speaks as an employee and not as a citizen, if the speech is part-and-parcel of his concerns

about his ability to properly execute his duties." *Nagle v. Marron*, 663 F.3d 100, 106-07 (2d Cir. 2011) (internal quotation marks and citation omitted).

Here, it is clear that Plaintiff was speaking within the scope of his official duties when he reported his concerns about the conditions of the gymnasium and locker room to the administration and his union. As a teacher, Plaintiff's tasks include ensuring that the rooms and spaces he uses to perform his duties are safe. *See Weintraub*, 593 F.3d at 203 (holding that teacher's complaint about employer's failure to discipline a student who had caused a safety hazard during class was not protected because it was "a means to fulfill, and undertaken in the course of performing, his primary employment responsibility"); *see also Kelly v. Huntington Union Free School District*, No. 09 Civ. 2101 (JFB), 2012 WL 1077677, at * 13 (E.D.N.Y. Mar. 30, 2012) (holding that plaintiff's complaint about unsafe boating conditions on a school trip that impeded her ability to teach a lesson, was made due to a concern for "her students, whose safety she was ultimately responsible," and that "[b]eing able to effectively teach a lesson and ensure student safety are indispensable prerequisite[s] to effective teaching and classroom learning") (internal citations omitted). Further, Plaintiff's speech was also based on information he obtained through his role as a physical education teacher, which required him to use the gym, locker room, and physical education office. *See, e.g.*, *Ross v. N.Y. City Dep't of Educ.*, 935 F. Supp. 2d 508, 518 (E.D.N.Y. 2013) (holding that physical education teacher's complaint to administrators and his union representative regarding safety of facility used for physical activities was made pursuant to his role as an educator, in part, because he had been assigned to teach at that facility).

Plaintiff's complaints to PESH and OSHA were also made pursuant to his role as a physical education teacher.[13]  These agencies provide a vehicle specifically for public employees to report health and safety violations, and Plaintiff alleges no facts that would allow the Court to find otherwise.  *See* New York State Department Of Labor PESH Bureau, Notice of Alleged Safety or Health Hazards, https://labor.ny.gov/formsdocs/wp/PESH7.pdf ("Any employee or representative of employees who believes that a violation of a safety or health standard exists, or that an imminent danger exists, may request an inspection by giving notice to the commissioner (of Labor) of such violation or danger."); *but see Ross*, 935 F. Supp. 2d at 522 (finding that OSHA complaint was made as a public employee at summary judgment stage only *because* at deposition plaintiff repeatedly stated that he contacted OSHA as an educator to protect his students and OSHA's correspondence with plaintiff described plaintiff as an employee). Similarly, the Court finds that Plaintiff's complaint to the NYSED is not protected speech.  His complaint to the NYSED regarding the school's failure to provide IEPs for his class was also made in his capacity as an educator.  *See White v. City of N.Y.*, No. 13 Civ. 7156 (ER), 2014 WL

---

[13] The few courts in this Circuit that have addressed this issue have not reached a conclusion regarding whether PESH and OSHA complaints can be made as a private citizen.  *See Gusler v. City of Long Beach*, 823 F. Supp. 2d 98, 127 (E.D.N.Y. 2011) (noting that PESH grievance procedures are "intended to protect employees" but not reaching question of whether PESH complaint was made as a public employee because complaint was not a matter of public concern); *Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp. 2d 158, 165 (N.D.N.Y. 2009) (noting that defendants conceded that plaintiffs' PESH and OSHA complaints "clearly qualify as speech on matters of public concern under the First Amendment" without addressing whether complaints were made as private citizens); *Collins v. Christopher*, 48 F. Supp. 2d 397, 409 (S.D.N.Y. 1999) (finding that plaintiff's complaint to OSHA regarding health violations were a matter of public concern without addressing whether complaint was made as a public employee); *see also Catanzaro v. City of N.Y.*, 486 F. App'x 899, 902 (2d Cir. 2012) (noting that plaintiffs' [directors at the Division of Emergency Response and Technical Assistance] external complaint to PESH "raise[d] different questions about the scope" of their official duties without finding whether complaints were made as private citizens); *but see Manon*, 131 F. Supp. 3d at 231 (finding that complaints made to PESH by plaintiff, a clerical associate, that worksite at defendant City Taxi & Limousine Commission had only one exit caused a substantial risk to safety and the air quality in the facility was a health hazard fell outside of the "purview of her responsibilities" and *arguably* addressed a matter of public concern).

4357466, at *11 (S.D.N.Y. Sept. 3, 2014) (holding that plaintiff's complaints regarding inadequate special education services were made pursuant to her official capacity as a teacher); *see also Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 16 Civ. 3809, 2017 WL 448603, at *8 (E.D.N.Y. Feb. 2, 2017) (finding that plaintiff's reporting of the absence of a special education teacher as required by New York law was "directly related to her responsibilities as a teacher").

Plaintiff's complaint to the USAO concerning the treatment of his Muslim students is more straightforward.  A public institution's treatment or regulation of religious practices is certainly a matter of public concern.  *See e.g.*, *Lewis v. N.Y.C. Transit Authority*, 12 F. Supp. 3d 418, 457 (E.D.N.Y. 2014) (holding that Transit Authority's allegedly discriminatory policy concerning Muslim women's khimars was clearly a matter of public concern); *Menes v. City Univ. of N.Y. Hunter Coll.*, 578 F. Supp. 2d 598, 614 (S.D.N.Y. 2008) (holding that plaintiff's complaint that displays were an unconstitutional endorsement of Christianity by a public institution touched on a matter of public concern).  Moreover, courts have repeatedly emphasized a public employee's complaint to outside or external agencies as a factor weighing heavily in favor of finding that the employee was acting as a private citizen.  Filing of a complaint with the USAO cannot be considered as reporting "up the chain of command" and undoubtedly falls within the ambit of recourses available to private citizens.  *See generally Matthews*, 779 F.3d at 175-76 (acknowledging that when an employee chooses a path "available to ordinary citizens," this factor weighs in favor of finding that the employee acted as a private citizen).  Accordingly,

Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Henry and Santiago is denied as to Plaintiff's filing of the USAO complaint.[14]

### B. *Monell* Claim

Plaintiff also asserts his Section 1983 claim against the DOE.  In order to bring a Section 1983 claim against a governmental entity (such as the DOE), Plaintiff must prove that the alleged constitutional violation either resulted from a "governmental custom, policy, ordinance, regulation, or decision," *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978), or an action taken by "a representative of that entity with the authority to make final decisions." *Runyon v. N.Y. City Transit Auth.*, No. 99 Civ. 8670 (CBM), 2002 WL 31093609, at *4 (S.D.N.Y. Sept. 18, 2002) (citing *Clue v. Johnson*, 179 F.2d 57, 62 (2d Cir. 1999)).  A "single act of a municipal officer is sufficient to establish municipal liability if that individual officer is possessed of final policy-making authority with respect to the area in which the action is taken." *Rucci v. Thoubboron,* 68 F. Supp. 2d 311, 325 (S.D.N.Y. 1999) (*citing McMilian v. Monroe Cty.*, 520 U.S. 781, 785 (1997)); *see also Vasquez v. N.Y. City Dep't of Educ.*, No. 11 Civ. 3674 (AJN), 2015 WL 3619432, at *10 (S.D.N.Y. June 10, 2015), *aff'd*, 2016 WL 3583219 (2d Cir. July 1, 2016) ("If the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely represents an act of official government

---

[14] Defendants also argue that Plaintiff's First Amendment retaliation claims should be denied to the extent that they include claims accruing before April 20, 2013. Def. Memo at 21.  The statute of limitations for Plaintiff's Section 1983, NYSHRL, and NYCHRL claims against Henry and Santiago is three years.  *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011).  Therefore, since Plaintiff filed the Complaint on April 20, 2016, Defendants correctly note that any claims against them which accrued before April 20, 2013 are time barred.  New York law provides a shorter statute of limitations – one year – for claims against the DOE.  *See* N.Y. Educ. Law § 3813(2–b) ("[N]o action or special proceeding shall be commenced against any [school, school district, board of education] more than one year after the cause of action arose.").  Accordingly, Plaintiff's NYSHRL and NYCHRL claims against the DOE that accrued before April 20, 2015 are dismissed as time barred.

'policy' as that term is commonly understood.") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).  Here, Plaintiff does not allege that a formal policy or custom was promulgated by the DOE, but rather that Henry, as Gateway's principal and final decisionmaker, took retaliatory actions, including holding disciplinary conferences and adding disciplinary letters to his file, denying his applications for coaching positions, and giving him poor evaluations, in violation of his constitutional rights.  Pl. Opp. at 6.

Defendants rely on New York Education Law §§ 3020 and 3020-a to argue that Henry was not a final decisionmaker as to teacher discipline.  Section 3020, titled "Discipline of Teachers," provides that "[n]o person enjoying the benefits of tenure shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section [3020-a][15] or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement."  N.Y. Educ. Law § 3020.  Importantly, Section 3020 explicitly states that the provisions in Section 3020-a "may be modified or replaced by agreements negotiated between the city school district of the city of New York and any employee organization representing employees."  N.Y. Educ. Law § 3020(3).   "The commissioner shall review any appeals *authorized* by such modification or replacement

---

[15] Section 3020-a provides an extensive explanation of the disciplinary procedures mandated by the DOE. Specifically, it states that charges against a tenured teacher "shall be in writing and filed with the clerk or secretary of the school district or employing board."  Upon receipt of the charges, the clerk or secretary of the school district or employing board must immediately notify the board.  A vote by the board is held to determine "whether probable cause exists to bring a disciplinary proceeding against an employee."  If probable cause is found, the board must notify the teacher using a written statement specifying the charges, possible penalties, and the teacher's rights.  The teacher can request a hearing on the charges.  A hearing officer renders a written decision that can be appealed to the New York state supreme court.  "The court's review shall be limited to the grounds set forth in such section.  The hearing panel's determination shall be deemed to be final for the purpose of such proceeding."  N.Y. Educ. Law § 3020-a.

procedures within fifteen days from receipt by such commissioner of the record of prior proceedings in the matter subject to appeal." *Id.* (emphasis added).

The Court finds that Plaintiff has not sufficiently alleged that Henry was the final policymaker with respect to discipline. Of note, courts in this Circuit are split as to whether a principal can in fact be considered the final policymaker with respect to teacher discipline. *See Fierro v. N.Y. City Dep't of Educ.*, 994 F. Supp. 2d 581, 588 (S.D.N.Y. 2014) ("Courts in this Circuit have disagreed on whether a principal is a final policymaker for purposes of a *Monell* claim."); *Compare T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 373 (S.D.N.Y. 2014) (noting that the record demonstrated that the Board (not the principal) had policymaking and oversight authority over District's disciplinary policies) *with Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263, 268 (N.D.N.Y. 2000) (finding plaintiff stated a claim for *Monell* liability because principal, "[b]y virtue of her position . . . was directly responsible for discipline in the school"). What Section 3020 and caselaw in this Circuit make clear is that whether a principal is a final policymaker depends on whether his or her decision "is subject to review by another official or entity." *Vasquez*, 2015 WL 3619432, at *11; *Fierro*, 994 F. Supp. 2d at 588 ("[W]hether [the principal] is a municipal policymaker turns on whether, under New York law, she had final decisional authority on the challenged employment action.").

Applying that rationale here, Henry was not the final policymaker with respect to teacher discipline because her decisions were reviewable. Throughout the Amended Complaint, Plaintiff alleges that he appealed Henry's (and Santiago's) evaluations and ratings and that many were reversed by the DOE. *See e.g.*, Amended Complaint ¶¶ 41, 63. The Court also finds that Henry was not the final policymaker with respect to per-session work. Importantly, Plaintiff alleges that he was denied many of the coaching applications because of his unsatisfactory year-end

22

ratings, which made him ineligible for per session work.  However, Plaintiff was able to appeal the negative year-end ratings.  Thus, liability cannot attach to the DOE.  *See Dressler v. N.Y. City Dep't of Educ.*, No. 10 Civ. 3769 (JPO), 2012 WL 1038600, at *17 (S.D.N.Y. Mar. 29, 2012) (recognizing that principal's negative evaluations resulted in loss of teacher's per session work but nonetheless finding that principal was not the final policymaker with respect to teacher evaluations); *Markovich v. City of New York*, No. 09 Civ. 5553 (ENV), 2013 WL 11332465, at *9 (E.D.N.Y. Aug. 21, 2013), *aff'd*, 588 F. App'x 76 (2d Cir. 2015) (same).  Moreover, Plaintiff alleges that he grieved or appealed Henry's denial of coaching positions for CHAMPS and PSAL sports teams.  He claims that at least on one occasion, the DOE affirmed his contractual rights to the coaching positions and awarded him lost wages.  *Id.* at ¶ 37.  Since Henry's decisions were subject to review by the DOE, municipal liability does not attach.

Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim against the DOE is granted.

### C. **N.Y.S.C.S.L. § 75-b Retaliation Claim**

Plaintiff alleges that he was retaliated against for reporting violations of "federal, city and state law . . . by the school administration regarding student safety concerns" in violation of Section 75(b)(2)(a).  Section 75-b(2)(a) states that,

> [a] public employer shall not dismiss or take other disciplinary or other adverse personnel action against a public employee regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action.

N.Y. Civ. Serv. Law § 75-b(2)(a).  Where an employee is subject to a collective bargaining agreement requiring mandatory arbitration, the employee's Section 75-b(2)(a) claim must be

asserted at the arbitration.  N.Y. Civ. Serv. Law § 75-b(3)(a).  If an employee is not subject to a collective bargaining agreement, "the employee may commence an action in a court of competent jurisdiction."  N.Y. Civ. Serv. Law § 75-b(3)(c).

In order to state a retaliation claim under Section 75-b, a plaintiff must allege (1) an adverse personnel action; (2) disclosure of information to a governmental body, among other things, regarding a violation of a law, rule, or regulation that endangers public health or safety, and (3) a causal connection between the disclosure and the adverse personnel action.  *See Portelos v. City of N.Y.*, No. 12 Civ. 3141 (RRM), 2013 WL 789460, at *2 (E.D.N.Y. Mar. 1, 2013).  Here, Plaintiff alleges that he was retaliated against for filing complaints with the NYSED, PESH, OSHA, and USAO.

"Where an employee is subject to a collectively negotiated agreement which contains provisions preventing an employer from taking adverse personnel actions," and which contains a binding arbitration provision for all such allegations, the employee shall grieve his claims and may assert them only before an arbitrator.  N.Y. Civ. Serv. Law § 75-b(3)(b).  Thus, only those employees not party to a collective bargaining agreement may file suit in federal court to enforce their rights under Section 75-b.  *Id.; see Healy v. City of N.Y. Dep't of Sanitation*, No. 04 Civ. 7344 (DC), 2006 WL 3457702, at *6 (S.D.N.Y. Nov. 22, 2006), *aff'd and remanded*, 286 F. App'x 744 (2d Cir. 2008); *Munafo v. Metro. Transp. Auth.,* Nos. 98 Civ. 4572 & 98 00 Civ. 0134 (ERK), 2003 WL 21799913, at *31 (E.D.N.Y. Jan. 22, 2003) ("An employee may bring suit under § 75-b in a court of competent jurisdiction only where a collective bargaining agreement does not substitute its own grievance procedure for the relief encapsulated by the statute.").  Additionally, Section 75-b does not provide for a cause of action against defendant employees in their individual capacities.  *See Finch v. N.Y.*, No. 10 Civ. 9691 (VB), 2012 WL

2866253, at *11 (S.D.N.Y. May 30, 2012).  Consequently, the claims against Henry and Santiago in their individual capacities must be dismissed.

Defendants claim that Section 75-b is inapplicable to Plaintiff because he alleges the existence of a collective bargaining agreement and a grievance procedure.  Def. Memo at 8.  In support of their claim, Defendants attach an excerpted copy of the CBA – including the provisions for the grievance procedure and special complaints – made between the Board of Education of the City School District of the City of New York and the UFT.  Declaration of Assistant Corporation Counsel Jessica Wisniewski ("Wisniewski Decl.") Ex. D.  The "Grievance Procedure" – Article 22 of the CBA – states as its objective, "the prompt and informal resolution of employee complaints as they arise and to provide recourse to orderly procedures for the satisfactory adjustment of complaints."  Ex. D, at 167.  Grievances are defined as violations or misinterpretations of provisions of the CBA and complaints that an employee has been "treated unfairly or inequitably by reason of any act or condition which is contrary to established policy or practice governing or affecting employees."  *Id.*  Article 22 also outlines the steps by which grievances are addressed.  Where the grievance is not resolved through the steps prescribed by the CBA, the CBA provides for an arbitration process.  *Id.*  "The decision of the arbitrator . . . [is] accepted as final by the parties to the dispute and both will abide by it."  *Id.* at 176. Additionally, the CBA includes a process for addressing "Special Complaints" relating to harassment or acts of intimidation.  *Id.* at 183.

The Court finds that because Plaintiff is subject to the CBA, which contains an applicable grievance procedure, he may not sue the DOE directly "but, instead is bound to follow the grievance procedure outlined in the CBA and exhaust all administrative remedies prior to seeking judicial relief."  *Ehrlich v. Department of Educ. of the City of N.Y.*, 2013 N.Y. Misc.

LEXIS 5202, *6 (Sup. Ct. Nov. 7, 2013).  Moreover, since Plaintiff has not alleged that he filed a

grievance about the alleged retaliatory actions taken against him for filing complaints with the

NYSED, PESH, OSHA, or USAO, he is precluded from asserting a Section 75-b claim against

the DOE.  *See Ehrlich*, 2013 N.Y. Misc. LEXIS 5202, at *6 (dismissing teacher's Section 75-b

claim against DOE because she was subject to same applicable collective bargaining agreement

between UFT and DOE and had not alleged that she had properly exhausted the mandated

procedures).  Accordingly, Defendants' motion to dismiss Plaintiff's retaliation claim pursuant to

Section 75-b is granted.[16]

### D.  **Intentional or Negligent Infliction of Emotional Distress and Defamation**

Before a plaintiff can bring a tort claim against a school district or its agents, the plaintiff

must present the governing body with a "notice of claim."  New York Education Law § 3813(2)

provides that

> no action or special proceeding founded upon tort shall be prosecuted or maintained
> against any of the parties named in this section or against any teacher or member of
> the supervisory or administrative staff or employee where the alleged tort was
> committed by such teacher or member or employee acting in the discharge of his
> duties within the scope of his employment and/or under the direction of the board of
> education, trustee or trustees, or governing body of the school unless a notice of
> claim shall have been made and served in compliance with *section fifty-e of the
> general municipal law*.

---

[16] Defendants correctly argue that Plaintiff's claims pursuant to Section 75-b should be dismissed to the extent that
they accrued before April 20, 2015.  *See Abdallah v. City of N.Y.*, No. 95 Civ. 9247 (MGC), 2001 WL 262709, at *5
(S.D.N.Y. Mar. 16, 2001) ("[C]laims for retaliation pursuant to [Section 75-b] must be commenced within one year
of the alleged retaliatory act.") (citing to N.Y. Civil Service Law § 75–b(3)(c) and N.Y.Lab.L. § 740(4)(a)).

N.Y. Educ. Law § 3813 (emphasis added).  "New York law requires that a plaintiff plead and prove compliance with [Section] 3813's notice of claim and statute of limitations requirements in any action against the DOE or its officers."  *Moore v. City of N.Y.*, No. 08 Civ. 8879 (PGG), 2010 WL 742981, at *9 (S.D.N.Y. Mar. 2, 2010) (citing *Amorosi v. South Colonie Ind. Central Sch. Dist.*, 9 N.Y.3d 367 (2007)).  Notice of claim requirements "are construed strictly by New York state courts," and failure to comply with these requirements "ordinarily requires a dismissal for failure to state a cause of action."  *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999) (internal quotation marks and citations omitted).  Here, Plaintiff does not allege compliance with Section 3813's notice of claim requirement in the Amended Complaint. Instead of moving to dismiss for failing to plead compliance, however, Defendants acknowledge that Plaintiff has filed a Notice of Claim against the DOE, and ask that the Court take judicial notice of it, but nevertheless dismiss Plaintiff's tort claims against Henry and Santiago for failure to individually serve them with a Notice of Claim.  Def. Memo at 10-11; Wisniewski Decl. Ex. A.

As an initial matter, the Court can take judicial notice of Plaintiff's Notice of Claim.  *See Berkowitz v. E. Ramapo Cent. Sch. Dist.*, 932 F. Supp. 2d 513, 528 n.8 (S.D.N.Y. 2013) (noting that because the notice of claim provision is "jurisdictional in nature," the court can consider evidence outside of the pleadings in resolving a motion to dismiss for lack of subject matter jurisdiction).  Plaintiff also concedes that the Notice of Claim was not served on either Henry or Santiago.  Indeed, the Notice of Claim names only the City of New York Comptroller's Office, the DOE, and Carmen Farina, the Chancellor, as defendants.  However, service on the individual defendants – after having served the DOE – is not a prerequisite for filing suit.  Pursuant to New York law, a court can excuse a plaintiff's failure to serve an individual employee before bringing

an action.  *See* N.Y. Gen. Mun. Law § 50-e(b) ("Service of the notice of claim upon an officer, appointee or employee of a public corporation shall not be a condition precedent to the commencement of an action or special proceeding against such person."); *see also DC v. Valley Cent. Sch. Dist.*, No. 09 Civ. 9036 (WWE), 2011 WL 3480389, at *2 (S.D.N.Y. June 29, 2011) ("Section 50–e(1)(b) permits the Court to excuse a failure to serve the individual defendants"). Accordingly, Defendants' motion to dismiss Plaintiff's tort claims against Henry and Santiago on the basis of lack of service is denied.

Defendants also argue that Plaintiff's intentional and negligent infliction of emotional distress claims should be dismissed for failure to state a claim.  Def. Memo at 11-15.  Under New York law, to state a claim for either intentional or negligent infliction of emotional distress, a plaintiff must allege an (1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; (3) and severe emotional distress.  *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001).  A claim based on intentional infliction of emotional distress also requires that the defendant intend to cause severe emotional distress.  *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010).  To satisfy the first prong, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 426 (S.D.N.Y. 2008) (quoting *Murphy v. Am. Home Prods., Corp.*, 58 N.Y.2d 293, 303 (1983)).

Here, Plaintiff alleges a series of allegedly unwarranted disciplinary hearings and actions, denied applications, falsified observations and ratings, inappropriate comments, and wanton disregard for his illnesses and physical limitations for a span of four academic years. Specifically, Plaintiff alleges that Henry prohibited him from sitting in his classes, assigned him

classes on multiple floors, and refused to give Plaintiff the key to the elevator for over a year,

though knowing of his physical ailments.   Henry also publicly humiliated Plaintiff, announcing

in a general meeting of all teachers that he would be given disciplinary letters and placed on a

TIP.   Thus, at this stage, the Court finds that Plaintiff's allegations against Henry–taken as true–

constitute "intolerable conduct sufficient to state a claim for intentional infliction of emotional

harm" against Henry.   *See e.g.*, *Santos v. Gen. Elec. Co.*, No. 10 Civ. 6948 (MHD), 2011 WL

5563544, at *11 (S.D.N.Y. Sept. 28, 2011), *report and recommendation adopted*, 2011 WL

5563536 (S.D.N.Y. Nov. 15, 2011) (noting that a particular sensitivity of a defendant can support

a finding of intentional infliction of emotional distress).   However, Plaintiff has not alleged

sufficient facts to state a claim for intentional or negligent infliction of emotional distress against

the DOE[17] or Santiago.   Plaintiff pleads no facts to suggest that the DOE engaged in any

unreasonable conduct.   Plaintiff's allegations that Santiago observed Plaintiff's class on three

occasions and wrote false evaluations does not rise to the level of "utterly intolerable" action

sufficient to state a claim for intentional or negligent infliction of emotional distress.

Accordingly, Defendants' motion to dismiss Plaintiff's intentional and negligent infliction of

emotional distress is denied as to Henry and granted as to the DOE and Santiago.[18]

---

[17] The claim of intentional infliction of emotional harm as against the DOE is dismissed as such claims are barred by public policy. *See Afifi v. City of New York*, 104 A.D.3d 712, 713 (2d Dep't 2013) ("Public policy bars claims alleging intentional infliction of emotional distress against governmental entities.")

[18] Pursuant to New York General Municipal Law § 50-e, Plaintiff's intentional and negligent infliction of emotional distress claims are subject to a ninety-day statute of limitations from the time the notice was filed.   *See* N.Y. Gen. Mun. Law. § 50-e ("[T]he notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.").   Since the Notice of Claim was filed on February 15, 2016, Plaintiff's intentional and negligent infliction of emotional distress claims are time-barred to the extent that they accrued prior to November 18, 2015.

### E. **Defamation**

Defendants argue that Plaintiff's defamation claim should dismissed for failure to plead the allegedly defamatory statements with sufficient particularity.  Def. Memo at 11-12.  To state a claim for defamation under New York law, a plaintiff must allege "(1) a false statement of fact, (2) about plaintiff, (3) published to a third party without authorization or privilege, (4) through fault amounting to at least negligence, and (5) causing defamation per se or a special harm." *Antares Mgmt. LLC v. Galt Glob. Capital, Inc.*, No. 12 Civ. 6075 (TPG), 2013 WL 1209799, at *13 (S.D.N.Y. Mar. 22, 2013).  Even under the more liberal standard of Federal Rule of Civil Procedure 8, to establish a claim for defamation, Plaintiff must identify "(1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and. (4) the third parties to whom the statements were published." *Yukos Capital S.A.R.L. v. Feldman*, No. 15 Civ. 4964 (LAK), 2016 WL 183360, at *1 (S.D.N.Y. Jan. 11, 2016) (citation omitted).

For special damages, a plaintiff must claim a "loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (internal quotation marks omitted).  Special damages "must be fully and accurately stated, with sufficient particularity to identify actual losses." *Celle*, 209 F.3d at 179.  "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010).  However, "[p]roof of special damages is unnecessary where the defamatory statement fits 'within an exception in which damages are presumed,' namely libel per se or slander per se." *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 524 (S.D.N.Y. 2013) (quoting

*Sharratt v. Hickey*, 20 A.D.3d 734, 799 (2005)).  "A statement that tends to injure another in his or her trade, business or profession is defamatory per se."  *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (quoting *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 411 (S.D.N.Y. 2009).

Here, Plaintiff has not alleged that any specific statements were made.  Instead, Plaintiff asserts that since he "has been employed by Defendant NYCDOE, Defendants did, in statements and in writing, with malice aforethought, disseminate about the Plaintiff false personal and professional information."  Amended Complaint ¶ 119.  He further alleges that he was "humiliated and demeaned in front of the faculty" during a meeting in which he was told to "step in front of the whole staff" and "it was announced to Plaintiff that he was receiving 2 disciplinary letters to the file, ineffective Measure of Teacher Practice, TIP document, and an ineffective evaluation."  *Id.* at ¶ 103.  The first claim does not identify what statements were made or when and the subsequent statement does not identify a speaker.  Thus, the Court finds that Plaintiff's allegations do not give Defendants adequate notice and are insufficient to state a claim for defamation.  *See Cruz v. Marchetto*, No. 11 Civ. 8378 (RWS), 2012 WL 4513484, at *4 (S.D.N.Y. Oct. 1, 2012) ("When a party fails to specifically claim when, where, or in what manner the statements were made, then a claim for defamation may be dismissed for failure to state a claim.") (internal quotation marks omitted); *Camp Summit of Summitville, Inc. v. Viniski*, No. 06 Civ. 4994 (CM), 2007 WL 1152894, at *10 (S.D.N.Y. Apr. 16. 2007) ("Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim.").  Moreover, because Plaintiff has not pled, and the Court cannot interpret, these allegations as defamation per se, Plaintiff was required to plead special damages, which he failed to do.  *See e.g.*, *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 570 (S.D.N.Y. 2014) (dismissing

plaintiff's defamation claim for failure to plead special damages).  Accordingly, Plaintiff's

defamation claim is dismissed.

### F.  <u>Employment Discrimination & Retaliation Claims</u>[19]

#### i.  <u>ADEA and Title VII Claims</u>[20]

The ADEA states that "it shall be unlawful for an employer to fail or refuse to hire or to

discharge any individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623.  To survive a motion to dismiss, a plaintiff must plausibly allege that (1) his

employer took an adverse employment action against him and (2) that his age was the "but for"

cause of the employer's adverse action.  *See Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d

72, 86 (2d Cir. 2015).  Importantly, individuals may not be held liable under the ADEA.  *See*

*Kurian v. Forest Hills Hosp.*, 962 F. Supp. 2d 460, 469 (E.D.N.Y. 2013) ("[T]he law is clear that

an age discrimination claim brought pursuant to the ADEA cannot lie against an individual.").

Similarly, to state a claim for discrimination on the basis of national origin under Title

VII, Plaintiff must show that (1) he is a member of the protected class; (2) he was qualified for

---

[19] Before bringing suit in federal court alleging violations of the ADEA, Title VII, and ADA, a plaintiff must first exhaust his administrative remedies by filing a complaint with the EEOC within 300 days of the alleged act of discrimination or retaliation.  *See Wade v. N.Y. City Dep't of Educ.*, No. 14 Civ. 1201, 2016 WL 3569897, at *1 (2d Cir. June 30, 2016) (applying filing requirement to ADEA, Title VII, and ADA causes of action).  Here, the parties do not dispute that Plaintiff filed a complaint with the EEOC because Plaintiff attached his right to sue letter to the Amended Complaint.  However, because Plaintiff filed the EEOC complaint on January 16, 2015, any claims that accrued before March 22, 2014 (300 days prior to the filing of the complaint) are time-barred.  *See Odom v. Doar*, No. 11 Civ. 152 (DLC), 2011 WL 2923889, at *2 (S.D.N.Y. July 21, 2011), *aff'd*, 497 F. App'x 88 (2d Cir. 2012) (dismissing claims that accrued more than 300 days before plaintiff filed his EEOC complaint as untimely).

[20] Plaintiffs' age discrimination claims under the NYSHRL and NYCHRL are subject to the same analysis as his ADEA claim.  *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 71 n.1 (2d Cir. 2005) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999)).  Thus, the Court need not discuss the claims separately here.

the position in question; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138). Title VII also does not provide for individual liability.

Here, Plaintiff fails to allege facts that give rise to an inference of discrimination or retaliation. Def. Memo at 16. Plaintiff makes only two allegations relating to his age in the Amended Complaint: (1) that he is forty-nine years old and (2) that Gateway "has a high incident rate of forced retirement and transferring of teachers who are over 40 years of age or more." Amended Complaint ¶ 105. He also makes only passing references of his Polish national origin. *See id.* at ¶ 101 (alleging that Henry referred to "Plaintiff's national origin in public" and discriminated against him and punished him "for being an Eastern European male"); *id.* at ¶ 105 (alleging that "[t]eachers with national origins outside the USA and with accents are targets of the administration"). Moreover, Plaintiff does not claim that any of the allegedly adverse actions were taken against him because of his age or national origin. Thus, Plaintiff fails to state an ADEA or Title VII claim. *See Gertskis v. EEOC*, No. 11 Civ. 5830 (JMF), 2013 WL 1148924, at *8 (S.D.N.Y. Mar. 20, 2013) (finding that plaintiff's Title VII claims failed because they were "conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct") (collecting cases). Further, since ADEA and Title VII claims cannot be pursued against individuals, Plaintiff's ADEA and Title VII claims against Henry and Santiago are also dismissed.

Accordingly, Defendants motion to dismiss Plaintiff's ADEA and Title VII discrimination and retaliation claims is granted.

ii.   __ADA Claim__

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  The ADA defines discrimination on the basis of disability as, among other things, "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such . . . employee."  42 U.S.C. § 12112.

To state a claim for disability discrimination and retaliation, a plaintiff must show, among other things, that his employer took adverse employment action against him.  *See Eisner v. City of N.Y.*, 166 F. Supp. 3d 450, 459, 462 (S.D.N.Y. 2016).  An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Galabya v. N.Y. City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted).  Materially adverse change may be indicated by "a termination of employment; a demotion with a decrease in wage or salary or a less distinguished title; a material loss of benefits; significantly diminished material responsibilities; or other indices unique to a particular situation."  *Borrero v. Am. Exp. Bank Ltd.*, 533 F. Supp. 2d 429, 436 (S.D.N.Y. 2008).  Importantly, the change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Id.* (internal quotation marks omitted).  Defendants challenge Plaintiff's claim on the basis that he has not sufficiently shown that he suffered an adverse employment action.  Def. Memo at 18.

Here, Plaintiff's allegations that he was not given the per-session coaching positions to which he applied, and for which he was qualified, because of the negative evaluations he

received are sufficient to establish, at this stage, that he was subjected to adverse employment action.  *See Dressler*, 2012 WL 1038600, at *6-7 (noting that teacher's unsatisfactory end-of-year rating precluded plaintiff from opportunity of participating per session work was sufficient to establish a basis on which a reasonable trier of fact could find a material adverse change); *Shapiro v. N.Y. City Dep't of Educ.*, 561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (holding that a triable issue of fact existed as to whether loss of per-session work due to negative ratings was an adverse employment action).  Moreover, in addition to loss of per-session work, Plaintiff also alleges that Henry forced him to stand while teaching his classes, teach classes on the fourth floor without access to the elevator (despite his physical limitations), assigned him a desk in a location that adversely affected his health, and restricted his class's access to the fitness center and outside facilities.  Taking Plaintiff's allegations as true, Plaintiff has alleged more than mere inconveniences.  Accordingly, Defendants' motion to dismiss Plaintiff's ADA claim is denied.

### G. <u>Plaintiff's Request to File an Amended Complaint</u>

In his opposition papers, Plaintiff requests that if the Court grants Defendants' motion to dismiss, the Court also grant him leave to amend the Amended Complaint.  Pl. Opp. at 14.  As a general rule, leave to amend a complaint should be freely granted.  *Jin v. Metro. Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir. 2002).  District courts have broad discretion in deciding whether to grant leave to amend.  *Pasternack v. Laboratory Corp. of Am.*, No. 10 Civ. 4426 (PGG), 2012 WL 3871348, at *7 (S.D.N.Y. Sept. 6, 2012).  "[W]here the possibility exists that the defect can be cured, leave to amend at least once should normally be granted unless doing so would prejudice the defendant."  *Laborers Local 17 Health and Ben. Fund v. Philip Morris, Inc.,* 26 F. Supp. 2d 593, 605 (S.D.N.Y.1998) (citing *Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d

Cir.1991)).  However, where the amendment would be futile or would result in undue prejudice
to the opposing party, denying leave to amend is proper.  *Id.*

Here, Plaintiff has amended the Complaint once as a matter of right, but has not been
granted to leave to amend.  *See Ronzani v. Sanofi SA,* 899 F.2d 195, 198 (2d Cir. 1990) (finding
that district court abused its discretion in dismissing complaint without granting leave to amend
where plaintiff "had not previously been given leave to amend"—although the original complaint
had been amended once pursuant to Rule 15(a) as a matter of course).  Moreover, the Court finds
that it is possible for Plaintiff to plead additional facts to address the deficiencies identified in
this opinion without prejudice to Defendants.  Accordingly, Plaintiff is granted leave to amend.

## V.  Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED as to
Plaintiff's defamation, Section 75-b retaliation, ADEA, and Title VII claims, and DENIED as to
Plaintiff's First Amendment retaliation, , intentional and negligent infliction of emotional
distress, and ADA claims.  The dismissal is without prejudice to the extent that it is based on
deficiencies in the pleadings.  If Plaintiff wishes to file a Second Amended Complaint, he must
do so by **April 18, 2017**.  If Plaintiff declines to further amend the pleadings, the parties are
directed to appear for a conference on **April 20, 2017 at 10:30 AM**.  The Clerk of Court is
respectfully directed to terminate the motion, Doc. 29.

It is SO ORDERED.


Dated:    March 15, 2017
          New York, New York


                                                        _____
                                                        Edgardo Ramos, U.S.D.J.